# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DARLENE LEWIS, as surviving Spouse,
Personal Representative of the Estate of
William J. Rivers, deceased, and as Parent
and Natural Guardian of WJR, JR., surviving
Minor Son of William J. Rivers,

ALLINER JENKINS, surviving Sister of
William J. Rivers,

SHABRAE JONES, surviving Sister of
William J. Rivers,

LEONARD CHISHOLM, surviving Step-Son
of William J. Rivers,

LEAH CHISHOLM, surviving Step-Daughter
of William Jr. Rivers,

ONEIDA OLIVER SANDERS and SHAWN
LAMAR SANDERS, SR., as Personal
Representatives of the Estate of Kennedy
Ladon Sanders, Deceased,

ONEIDA OLIVER SANDERS, surviving
Mother of Kennedy Ladon Sanders,

SHAWN LAMAR SANDERS, SR., surviving
Father of Kennedy Ladon Sanders,

CHRISTIAN SANDERS, surviving Brother
of Kennedy Ladon Sanders,

KENDALL SANDERS, surviving Sister of
Kennedy Ladon Sanders,

SHAWN JAMAR SANDERS, surviving
Half-Brother of Kennedy Ladon Sanders,

Case No:      1:26-CV-00194 (CRC)

**AMENDED COMPLAINT**

1

TAYLOR SANDERS, surviving Half-Sister
of Kennedy Ladon Sanders,

FRANCINE MOFFETT and PERCELL
MOFFETT, as Personal Representatives of
the Estate of Breonna Moffett,

FRANCINE MOFFETT, surviving Mother of
Breonna Moffett,

PERCELL MOFFETT, surviving Father of
Breonna Moffett,

KEONNA MOFFETT, surviving Sister of
Breonna Moffett,

FRANCINE MOFFETT and PERCELL
MOFFETT, as Parents and Natural Guardians
of PLM , surviving Minor Brother of Breonna
Moffett,

FRANCINE MOFFETT and PERCELL
MOFFETT, as Parents and Natural Guardians
of AM, surviving Minor Sister of Breonna
Moffett,

Plaintiffs,

-v.-

ISLAMIC REPUBLIC OF IRAN,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran,

AYATOLLAH ALI HOSEINI-KHAMENEI,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street

Tehran, Iran,

IRAN MINISTRY OF INFORMATION AND
SECURITY ("MOIS"),
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran,

ISLAMIC REVOLUTIONARY GUARD
CORPS,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran,

IRAN MINISTRY OF ECONMIC AFFAIRS
AND FINANCE ("IMEAF"),
Sour Esrafil Street, Bab Homayoun Avenue,
Tehran, Iran,

IRAN MINISTRY OF DEFENSE AND
ARMED FORCES LOGISTICS
("IMDAFL"),
Ali Shamkhani Dabestan Street, Seyyed
Khandan Bridge, Resalat Expressway, Tehran,
Iran,

MAHDI MOHAMMAD SADEGHI, a/k/a
MOHAMMAD MAHDI SADEGHI,
Central Falls Detention Facility Corporation
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863-1506

MOHAMMAD ABEDININAJAFABADI,
a/k/a MOHAMMAD ABEDINI,
Ground Floor, No 4, Payam Azadi cul-de-sac
Sharhd Ahmad Ghasemi St., Timuri Central
Sector, Tehran City, Tehran Province, Iran

SAN'AT DANESH RAHPOOYAN AFLAK
CO., a/k/a DSRA or SADRA,
Ground Floor, No 4, Payam Azadi cul-de-sac
Sharhd Ahmad Ghasemi St., Timuri Central
Sector, Tehran City, Tehran Province, Iran

IRANIAN NATIONAL ELITES
FOUNDATION, a/k/a INEF,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran

ISLAMIC RESISTANCE IN IRAQ,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran

KATAIB HEZBOLLAH, a/k/a KATA'IB
HEZBOLLAH,
c/o H.E. Seyed Abbas Araghchi
Minister of Foreign Affairs
Imam Khomeini Street
Tehran, Iran

                    Defendants.

Plaintiffs in this action are the personal representatives of the Estates of, and/or family members of, three American citizens in active service as Sergeants in the United States Army who were murdered as a result of a terrorist attack on a military installation and logistics outpost — designated as "Tower 22" — on the territory of the Hashemite Kingdom of Jordan ("Jordan") on January 28, 2024. The lethal attack was carried out by terrorists from Defendant ISLAMIC

RESISTANCE IN IRAQ, which is part of a larger group of Iraq-based terrorist organizations, including KATAIB HEZBOLLAH, a/k/a KATA'IB HEZBOLLAH, ("Kataib Hezbollah"), that receive direct and material support from the Defendant ISLAMIC REPUBLIC OF IRAN ("Iran") and its governmental agencies and instrumentalities (collectively, "Iranian Defendants"). Plaintiffs seek compensatory and punitive damages against the Iranian Defendants for their roles in providing direct and material support to ISLAMIC RESISTANCE IN IRAQ, KATAIB HEZBOLLAH, and other militia groupings operating out of Iraq.  In support of their claims, Plaintiffs state the following:

## JURISDICTION AND VENUE

1.     Jurisdiction arises pursuant to 28 U.S.C. §1330(a)-(b) (suits against foreign states), § 1331 (federal question) and § 1332(a)(2) (diversity of citizenship via an action by citizens of a State against citizens or subjects of a foreign state).

2.     Jurisdiction also arises under the anti-terrorism exception to foreign sovereign immunity codified at 28 U.S.C. § 1605A.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

4.     As herein alleged, actions for wrongful death, personal injury and related torts perpetrated by the Islamic Resistance in Iraq, Kataib Hezbollah, and other militias in Iraq, as well as by the Iranian Defendants through the foreign state itself, its political subdivisions, its agencies and instrumentalities, and through Iran's officials, employees and agents, fall within the exceptions to jurisdictional immunity contained in the Foreign Sovereign Immunities Act, specifically the terrorism exceptions contained at 28 U.S.C. § 1605A.

## PLAINTIFFS

5.      DARLENE LEWIS, a citizen of the United States and a resident of the State of Georgia, is the surviving Spouse of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff DARLENE LEWIS brings a claim individually for solatium damages.

6.      DARLENE LEWIS, as Personal Representative of the Estate of William Rivers, Deceased, also brings claims for Wrongful Death, Pain & Suffering, and Economic Loss on behalf of the Estate of William Rivers.

7.      WJR JR., a citizen of the United States and a resident of the State of Georgia, is a surviving Child of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff DARLENE LEWIS brings a claim on behalf of WJR, JR., as his Parent and Natural Guardian, for WJR, JR.'s individual solatium damages.

8.      ALLINER JENKINS, a citizen of the United States and a resident of the State of North Carolina, is a surviving Sister of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff ALLINER JENKINS brings a claim individually for solatium damages.

9.      SHABRAE JONES, a citizen of the United States and a resident of the State of Pennsylvania, is a surviving Sister of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah

and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff SHABRAE JONES brings a claim individually for solatium damages.

10.    LEONARD CHISHOLM, a citizen of the United States and a resident of the State of Georgia, is a surviving Step-Son of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff LEONARD CHISHOLM brings a claim individually for solatium damages as the functional equivalent of Decedent's natural Son.

11.    LEAH CHISHOLM, a citizen of the United States and a resident of the State of Georgia, is a surviving Step-Daughter of William Rivers, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff LEAH CHISHOLM brings a claim individually for solatium damages as the functional equivalent of Decedent's natural Daughter.

12.    ONEIDA OLIVER SANDERS, a citizen of the United States and a resident of the State of Georgia, is the surviving Mother of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff ONEIDA OLIVER SANDERS brings a claim individually for solatium damages.

13.    SHAWN LAMAR SANDERS, SR., a citizen of the United States and a resident of the State of Georgia, is the surviving Father of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried

out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance. Plaintiff SHAWN LAMAR SANDERS, SR. brings a claim individually for solatium damages.

14.    ONEIDA OLIVER SANDERS and SHAWN LAMAR SANDERS, SR., jointly as Personal Representatives of the Estate of Kennedy Ladon Sanders, Deceased, also bring claims for Wrongful Death, Pain & Suffering, and Economic Loss of behalf of the Estate of Kennedy Ladon Sanders.

15.    CHRISTIAN SANDERS, a citizen of the United States and a resident of the State of Georgia, is a surviving Brother of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance. Plaintiff CHRISTIAN SANDERS brings a claim individually for solatium damages.

16.    KENDALL SANDERS, a citizen of the United States and a resident of the State of Georgia, is a surviving Sister of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance. Plaintiff KENDALL SANDERS brings a claim individually for solatium damages.

17.    SHAWN JAMAR SANDERS, a citizen of the United States and a resident of the State of Florida, is a surviving Half-Brother of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided

direct and material support and assistance.  Plaintiff SHAWN JAMAR SANDERS brings a claim individually for solatium damages.

18.    TAYLOR SANDERS, a citizen of the United States and a resident of the State of Georgia, is a surviving Half-Sister of Kennedy Ladon Sanders, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance in furtherance of the attacks.  Plaintiff TAYLOR SANDERS brings a claim individually for solatium damages.

19.    FRANCINE MOFFETT, a citizen of the United States and a resident of the State of Georgia, is the surviving Mother of Breonna Moffett, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff FRANCINE MOFFETT brings a claim individually for solatium damages.

20.    PERCELL MOFFETT, a citizen of the United States and a resident of the State of Georgia, is the surviving Father of Breonna Moffett, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff PERCELL MOFFETT brings a claim individually for solatium damages.

21.    FRANCINE MOFFETT and PERCELL MOFFETT, jointly as Personal Representatives of the Estate of Breonna Moffett, Deceased, also bring claims for Wrongful Death, Pain & Suffering, and Economic Loss of behalf of the Estate of Breonna Moffett.

22.    KEONNA MOFFETT, a citizen of the United States and a resident of the State of Georgia, is a surviving Sister of Breonna Moffett, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  Plaintiff KEONNA MOFFETT brings a claim individually for solatium damages.

23.    FRANCINE MOFFETT and PERCELL MOFFETT also bring claims jointly as Parents and Natural Guardians of PLM, a minor and a citizen of the United States, a resident of the State of Georgia, and a surviving Brother of Breonna Moffett, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  FRANCINE MOFFETT and PERCELL MOFFETT bring claims on PLM'S behalf for his individual solatium damages.

24.    FRANCINE MOFFETT and PERCELL MOFFETT also bring claims as Parents and Natural Guardians of AM, a citizen of the United States, a resident of the State of Georgia, and a surviving Sister of Breonna Moffett, one of the American Decedents murdered as a result of the January 28, 2024, Tower 22 terror attack, which was carried out by Kataib Hezbollah and in furtherance of which Iran and the Iranian Defendants provided direct and material support and assistance.  FRANCINE MOFFETT and PERCELL MOFFETT bring claims on AM's behalf for her individual solatium damages.

## **DEFENDANTS**

### *Islamic Republic of Iran*

25.     Defendant Islamic Republic of Iran ("Iran") is a foreign state within the meaning of 28 U.S.C. § 1391(f).  Iran maintains an Interest Section within the United States at the Embassy of Pakistan at 2204 Wisconsin Avenue, NW, Washington, D.C. 20007.

26.     Iran has been waging virtual warfare against the United States for over thirty years. Iran wages its undeclared war through asymmetrical and unconventional hostilities and terrorism, often through proxies such as Hamas, Hezbollah, and in this case, Co-Defendants the Islamic Resistance in Iraq, Kataib Hezbollah, and other militia groupings operating out of Iraq.

27.     Iran has for many years been designated as a foreign state that sponsors terrorism within the meaning of the Export Administration Act of 1979, 50 U.S.C. App. §2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C. § 2371(b).  Iran has also been designated as a foreign state sponsor of terrorism by the U.S. Department of State every year since 1984, up to and including the day of the terror attack that is the subject of this action.  Iran has repeatedly been found liable under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602, et seq., for deaths and injuries caused by its activities as a state sponsor of international terrorism, particularly in connection with acts perpetrated by the Iran-sponsored paramilitary terrorist organization known as "Hizballah" or "Hezbollah." Iran's involvement in international terrorism has been documented in a long line of cases in both this Court and the United States District Court for the Southern District of New York, including decisions in *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20 (D.D.C. 2009), *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010), and *Havlish v. bin Laden*, 2012 WL 3090979 (S.D.N.Y. 2012). *See also,* Findings of Fact and Conclusions of Law entered by the Honorable George B. Daniels in *Havlish, et al. v. bin Laden, et al.* on December 22, 2011.

11

28.     Since the time Iran was designated by the State Department as a state sponsor of terrorism, a large body of evidence has been collected and analyzed which shows conclusively that Iran regards and pursues terrorism as an instrument of state policy, like diplomacy or military power — a tool to be used to further its political objectives.  The evidence shows that Iran has, over the years, directly carried out assassinations, bombings and other terrorist acts against its enemies, and that Iran has also carried out such terrorist acts through its terrorist proxy, Hezbollah. Iran has also provided material support and assistance to international terrorist groups, sometimes directly, and other times indirectly through Hezbollah, in the form of money, training, sanctuary, documentation, intelligence, weapons and other types of assistance.  The Islamic Resistance in Iraq, Kataib Hezbollah, and other militias in Iraq are among the terrorist organizations that have received direct and material support from Iran and Hezbollah.

29.     In order to carry out its policies of terrorism and support for terrorist groups, Iran has created and used government organizations including intelligence ministries, the military, and various types of quasi-governmental companies and entities which are directly answerable to, and receive instructions from, the Islamic regime in power in Iran.

30.     As described herein, Iran acted through its officials, officers, agents, employees, agencies and instrumentalities in providing direct and material support, and resources, to Defendants the Islamic Resistance in Iraq, Kataib Hezbollah, and other militia groupings operating out of Iraq, who are themselves also agents and instrumentalities of Iran.  The support provided by Iran included assistance in, and contributions to, the preparation and execution of the plans that culminated in the January 28, 2024, aerial drone attack on Tower 22 in Jordan, which resulted in the murder of Plaintiffs' Decedents.

31.     The following paragraphs set forth in detail the individuals, agents, instrumentalities, and governmental entities of Iran (collectively the "Iranian Defendants") who are named as Defendants in this action:

### *The Iranian Defendants*

32.     **AYATOLLAH ALI HOSEINI-KHAMENEI ("Khamenei")**, is the most important and powerful official in Iran. Ayatollah Khamenei has been the Supreme Leader of the Islamic Republic of Iran since 1989. Khamenei is the commander-in-chief of the armed forces, appoints the head of each military service, declares war and peace for the nation-state of Iran, appoints the head of Iran's judiciary, and may intervene to dismiss the elected president of Iran, among many other powers outlined in Article 110 of the Iranian Constitution. Ayatollah Khamenei's power is, as his title suggests, supreme. He is the head of state, and, for all intents and purposes, Khamenei is the Iranian government. Khamenei is certainly — by far — the most powerful person in the Iranian government. His term of office is unlimited. Defendant Khamenei has a long record of direct involvement in Iran's material support for terrorism. In the late 1990s, Ayatollah Khamenei formed a special intelligence apparatus that reported directly to him and worked under his direct control. This special intelligence apparatus has engaged in the planning, support, orchestration, and direction of terrorist acts. Khamenei has been found to be an instrumentality of Iran for purposes of liability and damages under the Foreign Sovereign Immunities Act. *See, e.g., Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1 (D.D.C. 1998). As head of the Iranian state, Khamenei is responsible for formulating and executing the nation's policies of supporting terrorism and terrorist groups such as Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq. As a government agent, Khamenei maintains a presence in the United States through the Permanent Representative of the Islamic

Republic of Iran to the United Nations 622 Third Avenue, 34th Floor New York, N.Y. 10017, or through the Iranian Interest Section c/o the Embassy of Pakistan, 2204 Wisconsin Avenue, NW, Washington, D.C. 20007.

33.    **IRAN'S MINISTRY OF INFORMATION AND SECURITY ("MOIS")** is a political subdivision of the nation-state of the Islamic Republic of Iran. This agency has core functions which are governmental, not commercial, in nature. This agency was established by law, its head is appointed by the Iranian President subject to confirmation by the Iranian Parliament, its budget is proposed by the President and approved by the Parliament, and its funding comes almost entirely from general tax revenues. Iran's MOIS is a well-funded and skilled intelligence agency with an annual budget between $100 million and $400 million. MOIS has been a key instrument of the government of Iran for its material support of terrorist groups like Hezbollah and as a terrorist agency of the Iranian government. Many of the U.S. State Department reports on global terrorism over the past twenty-five (25) years refer to MOIS as Iran's key facilitator and director of terrorist attacks. MOIS has been found to be an instrumentality of Iran for purposes of liability and damages under the Foreign Sovereign Immunities Act. *See, e.g., Sutherland. v. Islamic Republic of Iran,* 151 F.Supp.2d 27 (D.D.C. 2001). With a large budget and extensive organization, MOIS is one of the most powerful ministries in the Iranian government. The ministry has traditionally operated under the guidance of the *Velayat–e Faqih* apparatus of the Supreme Leader.

34.    **The ISLAMIC REVOLUTIONARY GUARD CORPS ("IRGC")** is a political/military subdivision of the nation-state of the Islamic Republic of Iran. This agency has core functions which are governmental in nature. The IRGC was established by the Iranian constitution, which sets forth the IRGC's responsibilities and powers. The IRGC reports directly to Iran's Supreme Leader, and it operates as an agent and instrumentality of the Supreme Leader

himself. The IRGC is a military force parallel to the regular Iranian military and to the formal governmental structure. The IRGC's funding comes in large part from general tax revenues, yet the IRGC also owns and controls hundreds of companies and commercial interests, and it holds billions of dollars in military, business, and other assets and government contracts. The IRGC has a special foreign division, known as the Qods (or Quds or "Jerusalem") Force, which is the arm of the IRGC that works with militant organizations abroad and promotes terrorism overseas. The Quds Force has a long history of engaging in coups, insurgencies, assassinations, kidnappings, bombings, and arms dealing, and it is one of the most organized, disciplined, and violent terrorist organizations in the world. The U.S. State Department has designated the IRGC as a "foreign terrorist organization," and the U.S. Treasury Department has designated the IRGC-Qods Force as a "terrorist organization." As a government agency, the IRGC maintains a presence in the United States through the Permanent Representative of the Islamic Republic of Iran to the United Nations 622 Third Avenue, 34th Floor New York, N.Y. 10017, or through the Iranian Interest Section c/o the Embassy of Pakistan, 2204 Wisconsin Avenue, NW, Washington, D.C. 20007.

35.    **IRAN'S MINISTRY OF ECONOMIC AFFAIRS AND FINANCE ("IMEAF")** is a political subdivision of the nation-state of the Islamic Republic of Iran located at Sour Esrafil Street, Bab Homayoun Avenue, Tehran, Iran. This agency has core functions which are governmental, not commercial, in nature. This agency was established by law, its head is appointed by the Iranian President subject to confirmation by the Iranian Parliament, its budget is proposed by the President and approved by the Parliament, and its funding comes almost entirely from general tax revenues. All Iranian government ministries are responsible for carrying out the policies of the Iranian government, among them state support for terrorism. The IMEAF, as a government agency, maintains a presence in the United States through the Permanent

Representative of the Islamic Republic of Iran to the United Nations 622 Third Avenue, 34th Floor New York, N.Y. 10017, or through the Iranian Interest Section c/o the Embassy of Pakistan, 2204 Wisconsin Avenue, NW, Washington, D.C. 20007. The IMEAF funnels funds to the Iranian government with knowledge that the Iranian government uses those funds to support its own terrorist activities as well as those of Defendant Hezbollah and Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq.

36.     **IRAN'S MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS ("IMDAFL")** is a political/military subdivision of the nation-state of the Islamic Republic of Iran located at Ali Shamkhani Dabestan Street, Seyyed Khandan Bridge, Resalat Expressway, Tehran, Iran. This agency has core functions which are governmental, not commercial, in nature. This agency was established by law, its head is appointed by the Iranian President subject to confirmation by the Iranian Parliament, its budget is proposed by the President and approved by the Parliament, and its funding comes almost entirely from general tax revenues. All Iranian government ministries are responsible for carrying out the policies of the Iranian government, among them state support for terrorism. The IMDAFL, as a government agency, maintains a presence in the United States through the Permanent Representative of the Islamic Republic of Iran to the United Nations 622 Third Avenue, 34th Floor New York, N.Y. 10017, or through the Iranian Interest Section c/o the Embassy of Pakistan, 2204 Wisconsin Avenue, NW, Washington, D.C. 20007. The IMDAFL funnels funds to the Iranian government with knowledge that the Iranian government uses those funds to support its own terrorist activities as well as those of Defendants Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq.

37.     **The ISLAMIC RESISTANCE IN IRAQ** is an umbrella group of hardline Shi'ite armed groups that have claimed more than 150 attacks on U.S. forces since the post October 7, 2023 war in Gaza began.  Its most elite armed faction, known as **KATAIB HEZBOLLAH, a/k/a KATA'IB HEZBOLLAH ("Kataib Hezbollah"),** is closest to Iran and is supported by the Iran defendants with money, weapons, armaments, aerial drones, explosives, IEDs, mortars, rockets, missiles and logistics used to attack U.S. forces in the Middle East.  Kataib Hezbollah was designated as a Specially Designated Terrorist organization ("SDT") by the U.S. on July 2, 2009. According to the U.S. Director of National Intelligence and the National Counterterrorism Center, Kataib Hezbollah "seeks to establish an Iran-aligned government in Iraq, expel U.S. and coalition forces from the country, and advance Iranian interests throughout the Middle East."  The Quds Force of the IRGC finances, instructs, directs, and controls Kataib Hezbollah and further provides it with military assistance, intelligence and selects, supports and supervises its leadership.

38.     At all relevant times, Iran used the Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq to further its funding and support of terrorist activities against the United States and its citizens, including its support for Defendant Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq.

39.     **MAHDI MOHAMMAD SADEGHI ("Sadeghi")**, a dual U.S.-Iranian national of Natick, Mass., was employed by a Massachusetts-based microelectronics manufacturer and was one of the founders of a separate Massachusetts-based technology company.

40.     **MOHAMMAD ABEDININAJAFABADI, A/K/A MOHAMMAD ABEDINI ("Abedini")**, of Tehran, Iran, is the founder and managing director of an Iranian company, **SAN'AT DANESH RAHPOOYAN AFLAK CO. ("SDRA" or "SADRA")**, that manufactures navigation modules used in the IRGC's military drone program.  SDRA's main business is the sale

of a proprietary navigation system—known as the Sepehr Navigation System—to the IRGC, which the United States designated as a Foreign Terrorist Organization ("FTO") on April 15, 2019. The primary application of SDRA's Sepehr Navigation System is for use in UAVs, as well as cruise and ballistic missiles.

41.    **THE IRANIAN NATIONAL ELITES FOUNDATION ("INEF")**, which is an Iranian governmental organization whose main purpose is to recognize, organize, and support Iran's elite national talents. INEF funded Sadeghi's U.S. company and Sadeghi went on to form an Iranian company that entered into a contract with SDRA for the purchase of SDRA's technology.

## FACTUAL BACKGROUND

42.    Tower 22 was originally established in 1997 as a contingency installation in a remote region of the Kingdom of Jordan known as Rukban, close to the tri-point where the territorial borders of Jordan, Iraq and Syria meet. It is considered a small outpost, with dimensions of 430 meters from East to West, and 700 meters from North to South. Its primary task in 2024 was to provide logistical and other forms of support to the U.S. Military's Al Tanf Garrison, located 13 miles away on the territory of Syria.

43.    Since 2015, by virtue of its location close to the borders of Syria and Iraq, Tower 22 has been used by U.S. troops to advise and assist missions related to supporting rebels fighting the Assad regime in Syria and the Islamic State a/k/a ISIS. As of January 2024, Tower 22 housed approximately 350 U.S. Army and Air Force soldiers in support of the ongoing U.S. military mission known as Operation Spartan Shield.

44.    On or about January 22, 2024, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC")

> "designated three leaders and supporters of one of the IRGC-QF's main Iran-aligned militia's in Iraq, Kata'ib Hizbollah (KH), as well

as a business that moves and launders funds for KH … [to underscore] the ongoing threat the IRGC-QF and its proxy network pose to U.S. personnel and the region. KH has carried out a series of sharply escalation drone and missile attacks against U.S. personnel in Iraq and Syria since Hamas's horrific attack on Israel on October 7. KH and other Iran-aligned militia groups in Iraq have consistently issued statements in support of Hamas's terrorism and declared their commitment to attacking U.S. personnel."

45.     In the early morning hours of January 28, 2024, an unmanned Shahed aerial drone equipped with high-powered explosives was launched by the Islamic Resistance in Iraq and Kataib Hezbollah at the direction of the Iranian Defendants to attack U.S. personnel sleeping in their quarters at Tower 22.  The drone exploded in the sleeping barracks and killed Sergeant William J. Rivers, age 46, Specialist Kennedy L. Sanders, age 24, and Specialist Breonna A. Moffett, age 23, all residents of Georgia in the United States, all assigned to the 718th Engineer Company, an Army Reserve unit out of Fort Moore, GA, under the command of the 926th Engineer Battalion and the 926th Engineer Brigade (the "Tower 22 Decedents").  The explosion also injured 47 others in the attack, requiring medical evacuation for eight soldiers.

46.     Shahed drones are manufactured in Iran at the direction of the IRGC, which deploys the Sepehr Navigation System to guide one-way exploding drones to their targets.

47.     Shortly after the attack, a Telegram account named SabereenNews22, which is known to be affiliated to an Iranian-aligned Militia Group, posted online that militants had conducted a drone attack against the U.S. base in the vicinity of Rukban, Syria.

48.     On February 3, 2024, U.S. Armed forces bombed facilities used by Iranian-backed militias present in and operating out of Syria and Iraq in retaliation for the Tower 22 drone attack, killing 29 on the territory of Syria and 16 on the territory of Iraq.

49.     On or about December 16, 2024, the FBI arrested two men in Boston, Mass. for conspiring to export technology to Iran that was used in the drone attack on Tower 22.

Investigators tracked components from the drone's navigational system to a company owned by one of the men arrested, namely Defendant Sadeghi, an Iranian-American dual national working for a Massachusetts-based semiconductor company.  Sadeghi conspired with Defendant Abedini to send the technology to Iran.  Abedini was arrested in Italy on or around December 16, 2024, and has deep ties to the Iranian government.  Adedini's Tehran-based company, Defendant SDRA, manufactures navigation systems for the IRGC's military drone program.  Both Sadeghi and Abedini conspired to circumvent U.S. export laws to send U.S.-origin sensitive semiconductor technology to Iran.  The electronic components that Abedini obtained and shipped to Iran were the same types used in SDRA's Sepehr navigation system that guided the drone that struck Tower 22 and killed Plaintiffs' Decedents.

50.    The United States Department of Justice alleged, in the words of Attorney General Merrick B. Garland, that Abedini and Sadeghi "supplied the sensitive technology used by the Iranian military to kill three American servicemembers in Jordan earlier this year."  Between 2021 and 2022, approximately 99% of SDRA's sales of the Sepehr Navigation System, which are used in IRGC one-way attack drones, were made to the IRGC's Aerospace Force.

51.    At all relevant times, the IRGC used the navigation technology to build one-way explosive armed Shahed drones to attack U.S. forces and supplied the drones to the militias it funded, supported, controlled, supervised, supplied — including Kataib Hezbollah — and directed one or more of those militias to attack Tower 22, resulting in the deaths of Plaintiffs' Decedents.

### Defendants Are Liable to Plaintiffs for Their Material Support of Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq

52.    The Iranian Defendants instructed, trained, directed, financed and otherwise supported and assisted Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq, and/or conspired in the instruction, training, direction, financing, and support of Kataib Hezbollah,

Islamic Resistance in Iraq and other militias in Iraq in connection with their terrorist plans.  In furtherance of those plans, Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq deliberately caused an aerial drone to strike and kill Americans stationed at Tower 22 in Jordan on January 28, 2024.

53.    As a direct and proximate result of the intentional, willful, reckless, and/or careless actions of the Iranian Defendants, Plaintiffs have suffered severe and permanent personal injuries, damages, and losses, including one or more of the following:

(a)    Decedents' fear of death during the aerial attack and explosions at Tower 22;

(b)    the severe mental anguish suffered by the Decedents and all Plaintiffs;

(c)    the severe pain and suffering suffered by the Decedents and all Plaintiffs;

(d)    the inability of all Decedents to perform the usual household and personal activities that they normally would have performed through the remainder of their natural life expectancies;

(e)    loss of Decedents' earnings and future earning potential;

(f)    loss of Decedents' life and life's pleasures;

(g)    loss of consortium, solatium and/or companionship;

(h)    costs relating to managing the estates of all Decedents; and

(i)    death of the Decedents as a result of the Defendants' conduct and that of their co-conspirators.

54.    The aforementioned deaths, personal injuries and losses experienced by the Plaintiffs were caused by the intentional, outrageous, reckless, and/or careless acts of the Iranian Defendants, acting individually and in concert, as well as the acts of their agents, servants,

employees, agencies and instrumentalities, acting within and during the course and scope of their employment, authority, or apparent authority.

## CLAIMS

### COUNT ONE

***Claims By All Plaintiffs Against Iran and the Iranian Defendants***
***Under Section 1605a Foreign Sovereign Immunities Act 28 U.S.C. § 1605a***

55.     Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

56.     At all relevant times, Defendant Iran was designated as a state sponsor of terrorism as required by § 1605A(a)(2)(A)(i)(I) in order to maintain an action under § 1605A of the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605A(a)(2)(A)(i)(I).

58.     The conduct of the Defendants Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq constituted acts of extrajudicial killing and torture within the meaning of FSIA §1605A(a)(1) and a violation of the Anti-Terrorism Act ("ATA") 28 U.S.C. §§ 2333 et seq.

59.     Iran and the Iranian Defendants provided material support and resources to Defendants Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq in furtherance of the murderous acts described above by the Defendants Kataib Hezbollah, Islamic Resistance in Iraq and other militia groupings operating out of Iraq at the direction of Iran.

60.     At all relevant times, Defendants Kataib Hezbollah, Islamic Resistance in Iraq and the other militias in Iraq were agents of Iran acting within the scope of their agency.

61.     The conduct of all Defendants violated the provisions of the FSIA, in particular 28 U.S.C. §1605A, and all Plaintiffs suffered damages as a result of the resultant violations.

62.     Plaintiffs, as estate representatives and/or family members of the Tower 22 Decedents, are entitled to recover damages from all Defendants under the provisions of the FSIA and the ATA.

63.     The injuries and damages suffered by the Plaintiffs by virtue of the deaths of the Tower 22 Decedents, and the consequences resulting therefrom, were caused by the intentional and reckless acts of Iran and the Iranian Defendants, as described herein.

64.     As a direct and proximate result of the deaths of the Tower 22 Decedents, Plaintiffs have been deprived of future aid, assistance, services, comfort, and financial support.

65.     As a direct and proximate result of Iran and the Iranian Defendants' cowardly, barbaric and outrageous acts of murder, Plaintiffs will forever grieve the deaths of the Tower 22 Decedents.

66.     As a further result of intentional and reckless acts of Iran and the Iranian Defendants, Plaintiffs have been caused to expend various sums to administer the Estates of the Tower 22 Decedents and have incurred other expenses for which they are entitled to recover.

68.     As a result of Iran and the Iranian Defendants' murderous conduct, the Tower 22 Decedents suffered damages including pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, loss of accretion to their estates and other items of damages as fully set forth in the paragraphs above which are incorporated herein by reference.

69.     As a result of the intentional, reckless and negligent acts of Iran and the Iranian Defendants as described above, the Tower 22 Decedents were placed in apprehension of harmful and offensive bodily contact (assault), suffered offensive and harmful bodily contact (battery),

suffered extreme fear, anxiety, emotional and psychological distress (intentional/negligent infliction of emotional distress), and were mentally and physically harmed, trapped, and falsely imprisoned (false imprisonment) prior to their deaths.

70.     The actions of Iran and the Iranian Defendants, acting in concert to carry out their unlawful objectives, were malicious, outrageous and were undertaken in willful, wanton, and reckless disregard of the rights of the Tower 22 Decedents and all Plaintiffs. Iran and the Iranian Defendants, acting individually and jointly, intended to carry out actions that would end the lives of the Decedents.

71.     Plaintiffs are entitled to solatium and other damages, as stated in § 1605A(c)(4) of the FSIA, 28 U.S.C. § 1605A(c)(4).

72.     As a result of their intentional, malicious, outrageous, willful and wanton conduct, the Iranian Defendants are jointly and severally liable to all Plaintiffs for punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor against the Defendants, jointly, severally, and/or individually, in an amount in excess of One Hundred Million Dollars ($100,000,000) for compensatory damages, including but not limited to solatium, and punitive damages, plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate.

## <u>COUNT TWO</u>

### *Claims by All Plaintiffs Against Iranian Defendants*
### *Under The Anti-Terrorism Act 18 U.S.C. § 2333*

73.     Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

74.     On July 2, 2009 Kataib Hezbollah and Islamic Resistance in Iraq were designated as a Foreign Terrorist Organizations under § 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189.

75.     The Anti-Terrorism Act, 18 U.S.C. § 2333, was amended in 2016 permitting a plaintiff to establish liability against a foreign state, such as Iran, for an injury arising from an act of international terrorism and "as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." *See* Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 4(a), 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)(1)-(2)).

76.     The term "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals. *See* 18 U.S.C. § 2333(d)(1); 1 U.S.C. § 1.

77.     The nation-state of Iran and the Iranian Defendants, some of which are corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals, as more fully described above, aided, abetted, and conspired with  Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the terrorist attacks of January 28, 2024, resulting in the murder and death of the Tower 22 Decedents.

78.     Defendants Sadeghi, MAbedini, SSDRA, and the IINEF, aided, abetted, and conspired with the other Iranian defendants, including Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq, to effectuate the terrorist attacks of January 28, 2024, resulting in the murder and death of the Tower 22 Decedents.

79.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq, Plaintiffs suffered damages.

79.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the murders and deaths of the Tower 22 Decedents, Plaintiffs have been deprived of future aid, assistance, services, comfort, and financial support.

80.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the murders and deaths of the Tower 22 Decedents, Plaintiffs will forever grieve the deaths of the Tower 22 Decedents.

81.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the murders and deaths of the Tower 22 Decedents, the Tower 22 Decedents suffered damages including pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, loss of accretion to their estates and other items of damages as fully set forth in the paragraphs above which are incorporated herein by reference.

82.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the murders and deaths of the Tower 22 Decedents, the Tower 22 Decedents were placed in apprehension of harmful and offensive bodily contact (assault), suffered offensive and harmful bodily contact (battery), suffered extreme fear, anxiety, emotional and psychological distress

(intentional/negligent infliction of emotional distress), and were mentally and physically harmed, trapped, and falsely imprisoned (false imprisonment) prior to their deaths.

83.     As a direct result of the Iranian Defendants aiding, abetting, and conspiring with Kataib Hezbollah, Islamic Resistance in Iraq and other militias in Iraq to effectuate the murders and deaths of the Tower 22 Decedents, the Iranian Defendants engaged in conduct that was malicious, outrageous and in willful, wanton, and reckless disregard of the rights of the Tower 22 Decedents and all Plaintiffs. The Iranian Defendants, acting individually and jointly, intended to carry out actions that would end the lives of the Decedents.

84.     Plaintiffs are entitled to compensatory damages, including but not limited to solatium, and other damages, which are trebled under 18 U.S.C. § 2333(a).

85.     As a result of their intentional, malicious, outrageous, willful and wanton conduct, the Iranian Defendants are jointly and severally liable to all Plaintiffs for punitive damages, which are trebled under 18 U.S.C. § 2333(a).

WHEREFORE, Plaintiffs demand judgment in their favor against the Iranian Defendants, jointly, severally, and/or individually, in an amount in excess of One Hundred Million Dollars ($100,000,000) for compensatory damages, punitive damages, and solatium, plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate, to be trebled under 18 U.S.C. § 2333(a).

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully Submitted,

Date: February 19, 2026          KREINDLER & KREINDLER LLP

By:      */s/ Vincent C. Lesch*_____
         Andrew J. Maloney (Bar ID: 476030)
         Daniel O. Rose (application pending)
         Megan Benett (*pro hac vice* applicant)
         Vincent C. Lesch (Bar ID: NY0675)
         485 Lexington Avenue
         New York, New York 10017
         Phone: (212) 687-8181
         amaloney@kreindler.com
         drose@kreindler.com
         mbenett@kreindler.com
         vlesch@kreindler.com